May it please the Court, my name is Glenn Nager. I'm counsel for Appellant Magma. With the Court's leave, I would reserve three minutes for rebuttal. In this case, the District Court granted summary judgment against Magma's breach of contract and breach of the duty of, implied duty of good faith and fair dealing on the premise that Magma didn't have any damages from these breaches. With respect, with regard to the breach of the duty of good faith and fair dealing, Magma, of course, had substantial attorney's fees and costs that it incurred between 2010 and 2017 in trying the litigation with National Union and Genesis with regard to whether or not it would be able to recover the monies that were due and owing under its insurance policy. But, counsel, with respect, it seems to me that your position conflates a breach of contract and equitable subrogation. In this particular case, it was not clear that National Union owed the money until after going back and forth twice to our court in which the court made it clear that the second tranche covering the period that National Union owed had been triggered. But until that occurred, it had no obligations technically. At that point, you'd spent a lot of money, but they weren't obligated to. Then at that point, you want to get your money back, but Magma was entitled to the money. You got a subrogee involved. The subrogee steps into the shoes of the subrogore. That's what we've got here, isn't it? Yes, that is what happened. But what we had in this court's Genesis III decision, this court held that the reason the subrogee was able to recover was because there was money due and owing under the insurance contract, which was a right of Magma, that that money had been due and owing since July of 2008, which is why the court ordered statutory interest at the contractual rate paid to the subrogee. And the court did so on the reasoning that the rights were those of Magma because all rights of an equitable subrogee are a derivative of the rights of the insured under the insurance contract. Right. And so that this court has already held in its Genesis III decision that there were rights that had not been honored. Yes, you're right, Judge Smith. They weren't matured at that point, though. It's true what you said in terms of the triggering date for the interest running, but they had the condition precedent to that occurring did not occur until our court recognized in Genesis III that it was that requirement of the national union to pay. It went back, but it wasn't clear until that point, was it? Yes, it was. And my yes is to there was a duty that was owing and had been breached prior to this Court's decision in Genesis III. The duty was a promise under a contract. That contract had to be honored at the time that money was paid out and the insured had a liability that it was subject to risk on. The judicial judgment ordering MAGMA to honor its contract and to rectify its breach by compensating the equitable suborgy of MAGMA didn't occur until 2017. But we're not accusing MAGMA, a national union, of contempt of this Court's order in 2017. What the accusation in the lawsuit was is that there was an underlying contract and that it was breached when there was a failure to honor it. And compliance with a judicial judgment enforcing a contract is not compliance with the contract itself. And so whether it's with regard to the underlying breach of contract claim, Genesis III is law of the case that there was a contractual right that was MAGMA had been deprived of the benefit of its bargain because it had never received, nor had its equitable suborgy ever received, the money that was owing under that contract. With respect, I don't understand what we said in Genesis III to be the law of the case in the sense that you talk about, that, in quotes, damages were due. I don't see it as finding a breach of contract. Where in the record do you find, or in our decision, do you find something that says this is a breach of contract and the damages are X? Well, in the — in Genesis III, in the last paragraph that deals with the interest that was due in owing, this Court held that the applicable interest rate was the interest rate on breaches of contract, and it held that the money was due from July 2008, but then after the breach — And the Court says its interest owed, pre-judgment interest owed after the breach up to the date of judgment. I mean, this — again, to put the claims in context, we obviously wouldn't be here arguing about law of the case if our remaining damages claims and our claim for breach of the duty of good faith and fair dealing hadn't also been dismissed. We won what we wanted to win on the policy itself in Genesis III. We're not here as an academic exercise. What — the reason why we're here on appeal on this instance is we've been deprived of our right to proceed with the duty of good faith and fair dealing claim and our additional small damages claims on the underlying breach. At the end of the day, though, the insured gets to look to you — I mean, rather, to National Union, instead of, I gather, your company. You want your money back, but you get your money back as the sub-regee of the insured. Isn't that correct? No, we are the insured. Okay. Genesis — I'm confusing you with that. I understand there's a lot of parties in this case. It gets a little hairy. MAGMA was the insured. It was MAGMA's insured. Right. But all your damages are indirect, you'd have to concede. It's attorney's fees. This is not a case where you're asking for attorney's fees because you litigated against National Union, and you want that money. You're seeking fees for litigation against a third party, right? That's correct, Chief Judge Thomas. On the — But can you give me a case where that kind of damage has been awarded? The Dela Hoya case — because remember, this is in diversity. Yes. It's a California state law. Right. The Dela Hoya case was a case in which a stolen gun was sold. That resulted in litigation by the purchaser of the stolen gun, and the California courts held that the attorney's fees in the third party litigation were coverable as reasonably foreseeable damages that could be awarded by a jury on the underlying breach of contract with regard to the sale of the gun. And that is — all we're saying here is that a reasonable jury could make a reasonable foreseeability determination that when National Union and MAGMA entered into their insurance contract in 2004, that if National Union denied coverage on the basis that the coverage actually should — should fall under the earlier insurance agreement, which was identical in form, that that was reasonably foreseeable that there could be third party litigation. Oh, sure. But you alleged in the third party litigation that that insurer was responsible, had a duty to indemnify you. Correct? Yes. So now you're saying it was foreseeable that you were wrong. No, actually — And that the veriments in your complaint were completely wrong because, in fact, it was another insurer that was liable for indemnity. What MAGMA said was that one of the two of you owes this money, and it is unclear at the outset which one of you owes it, which the first-level insurer said, both of the excess carriers said. And that's what was litigated between 2006 and 2010. Once the notice-of-circumstance issue was resolved by this Court as a matter of law, the only issue that had been raised had been disposed of. But what you're really seeking, if I understand your theory, is attorneys' fees that you spent litigating against the third party, urging that that third party was liable to you. No, no. There's a timing issue, I think, confusion with all due respect, Chief Justice. We're not trying to seek recovery of the fees between — incurred in the litigation with Genesis prior to 2010. I understand that. We're only trying to recover the attorneys' fees that were incurred in the third party litigation with Genesis and all of the fees between 2010 and the present with National Union after this Court's decision in 2010 clarified and ruled on as a matter of law the notice-of-circumstance issue. And our principal claim — again, I want to make sure that the Court doesn't miss this, because the district court only devoted a sentence to the — to the bad-faith claim. Right. But that's the principal claim that really is at issue and left in this case. How can there be bad faith when the insured was suing in the first place to determine which of the two owed anything? Well, the answer to that question is, one, we haven't — we're claiming unreasonable delay in honoring the policy after this Court's decision in 2010. And so between 2010 and 2017, rather than adhere to the position that it had taken in the previous four years that the only issue was whether the notice-of-circumstance was a valid notice-of-circumstance or not, National Union switched positions and started arguing that, in fact — You did, too. Well — Everybody switched positions, right? But they — we didn't switch position on what the only issue in the case was. We respected this Court's judgment that the — that we — we wanted coverage. And this Court said the coverage — And you got coverage. And we eventually — but our whole bad-faith claim is we didn't get that — actually get that coverage from National Union until 2017. We had to go through seven more years of litigation in order for that to happen. Executive risk switched the underlying first tier of the — first tier in the Tower in 2013. So July 2013 through 2017, all we did was litigate new and contrived defenses that National Union came up with as to whether or not executive risk actually had the authority. But isn't that the very point, though? The — it was hotly disputed that this was owed. Ultimately, there was a determination that it was. I don't see how you can say that a jury, for example, would conclude that National Union acted in bad faith. Now, we — you've dealt with — we've dealt with true bad-faith issues where the insurance company just basically gives people the back of the hand. They don't honor it. You don't have that here. You've got people who are litigating whether the first tranche or the second tranche is involved. But the fact is, it's a question of who is owed. The insured sues. You have a dispute with them. You have a subrogation situation. But it's not bad faith. With all due respect, Judge Smith, it is. There has to be a reasonable basis for delay in payment. They didn't come forward and say, here's your money, but we're reserving our rights. They — after the first — after the — this Court ruled in 2010 that there hadn't been a valid notice of circumstance, which had been the only issue in the case, and the underlying insurer switched to the 0406 policy, they didn't say, here's your money. Instead, they continued to contrive every basis they could for not paying. With respect, though, you have a distinguished district judge who twice ruled in a way that our Court reversed. Now, that's not unusual in the Ninth Circuit. But — and the fact is, until that was done, they didn't know. Nothing wrong with them taking the position that they did. But that doesn't mean it's in bad faith. Again, the question under California law is unreasonable delay, and the question of bad faith is a jury question. I see my time's up. I'd like to reserve it. Thank you, Counsel. Johnson. Good morning, Your Honors. My name's Michael Johnson. I represent the Appellee National Union. There are very good reasons why this summary judgment should be affirmed in favor of national union. The arguments that we've asserted have been touched on already by Judge Smith. Why isn't delay an issue of fact for the jury, or whether the delay was unreasonable or not in terms of fulfilling the duty to indemnify? Well, a couple reasons. One, the facts are undisputed as to the basis for national union's timing of its payment. Two, the law of the case — Well, they may be undisputed, but whether or not it was reasonable or not may be a jury question. It's not a jury question because litigation conduct by an insurer is privileged under California Civil Code Section 47, under the litigation privilege. And that issue has been addressed in a number of cases, including Nye's, Old Republic, California Physicians, Arbol Media, Tomaselli, and Coleman, all of which are cited in our briefs. It would deprive an insurer of due process. Yes. No. Ultimately, though, it's the decision of the insurer, not the litigation tactics that's at issue in a covenant of good faith and fair dealing case. So, in other words, you may say, well, we made some litigation choices, but, in fact, if the decision — if the insurer unreasonably delayed payment, which it owed, then that can be a question of fact for a jury in a bad-faith case. Well, the decision here was the decision by MAGMA to tender a notice of circumstance to Executive Risk and Genesis and Excel in 2003, when it gave the synopsis patent infringement action to those carriers in that policy period as notice of circumstances, and then failed to comply with the policy requirements of the content of that notice. That was what triggered this entire 15-year odyssey of litigation. Okay? I understand that, but it sounds like a factual defense. No, it's not a factual defense because MAGMA advocated for that position in litigation in the district court and in this court, advised this court that its coverage position and placement of the loss in the first policy period was a reasonable decision, a decision undertaken in good faith. The court disagreed with that, but that was their position before this very court in 2010 in the Genesis I litigation. MAGMA. MAGMA took that position. Mr. Cusack, their attorney, who's here in this courtroom today, advised the court that that coverage position was undertaken in good faith and was reasonable. And it's undisputed, as this court found in Genesis II, that Executive Risk's statement that it would adjust its record to reflect exhaustion of the 0406 policy was explicitly contingent on a judicial determination that its decision was not correct. There has been no determination. So that was 2013 when this court remanded the matter back to the district judge to evaluate the correctness of Executive Risk's decision to place this loss in the first policy period. Do you agree that the district court's analysis on the government of good faith and fair dealing was one sentence, right? Right. But that's because there was no breach of contract, which is a necessary predicate to a bad faith claim. Generally speaking, that's true. But I think there is a theory that unreasonable delay in fulfilling the duty to indemnify, even though the duty to indemnify has been fulfilled, can constitute a breach of the covenant of good faith and fair dealing. That notion was just outright rejected in the Emerald Bay case, which addressed both the breach of contract and bad faith claims. It's very important to keep in mind that an excess insurance policy provides a specific contractual benefit, which is a layer of indemnity coverage. Right. We're not talking about the duty to defend here. It's strictly the duty to indemnify. Correct. And that is in regard to a claim against its insurant. The claim against MAGMA here was the securities actions, which were filed in 2005, settled, released, funded, and dismissed in 2007. After that, the claim had been fully adjusted. And frankly, the duty of good faith and fair dealing ended at that point. After that case was settled, after the claim was resolved, after and during that time, National Union acted fully in compliance with the wishes of its insurant and with the decision of its primary carrier, who it is supposed to respect. After that, there was just litigation in the form of equitable subrogation by Genesis against MAGMA to seek reimbursement. There's no duty of good faith and fair dealing that applies in the litigation conduct. And that, again, is based on the litigation privilege, NISE, Old Republic, California Physicians, et cetera, et cetera. So for that reason, you know, there was no bad faith here for that reason and for the reason that there was no breach of contract. So in other words, your position is that since the bad faith would have had to occur vis-à-vis MAGMA, which was not involved once the payment was made to settle the initial lawsuit, and the litigation went just between the two insurance companies, there could be no breach of the covenant of good faith, right? Is that your position? That's correct, Your Honor. Because, you know, again, Emerald Bay and the cases that it cites, Ringler, and the cases that follow it are wholly dispositive of this case. MAGMA was fully protected by the settlement funded by Genesis, and it did not experience any damages as a result. Well, let me ask you a question about that because I'm not necessarily convinced. So when Genesis contributed $5 million toward the settlement, they did that under a reservation of rights, correct? That's correct. Okay. So they didn't receive from Genesis what they were entitled to receive under their contract with you. It's not really fungible to say National Union owed us $5 million, free and clear, or we can get the right to litigate with Genesis over its reservation of rights and its subrogation claim. Now, under California law, it is fully appropriate for an insurance carrier to comply with its policy provisions by providing the benefits due and owing under the policy. In this case, it's a $5 million slice of indemnity dollars, and reserve its rights to either seek reimbursement of those funds from its insured under what's called a bus reservation, and it's the legally recognized method for resolving those issues. It's not a good faith or bad faith issue in the slightest. Had there been a different fact pattern, we would be talking about something different. But again, the Emerald Bay case is very clear, addresses these issues, found that there were no damages. Another key point that I should mention is that California case authorities hold that the mere potential for damages do not satisfy the elements for a breach of contract claim. So, you know, actual injury is required, and that's in the Ruiz decision and Aguilera, which cites a number of California decisions, the Bankey versus State Farm decision, all require actual tangible injury as an element of a breach of contract claim, and we don't have that here. Gather that's the reason you take the position that there is no breach of contract at all, because the contract was with Magma, which was paid by Genesis, and thereafter it was a dispute between the two insurance companies as to which the tranche had to pay. Ultimately it found that National Union was responsible, but the payment goes to Magma, and then they have a subrogation action, and they're trying to get attorney fees on top of that. Is that your position? Yeah. I mean, it's really a phantom damages claim, because Genesis paid the money to settle the securities actions, and then they got it back in full with prejudgment interest from National Union, so they were made whole. Magma got the commercial benefit of these excess policies. It received the full benefit that it was entitled to under these excess policies, specifically that $5 million layer of indemnity dollars. And the policies were exactly identical except for the time period they covered. Is that right? Essentially. Essentially they're both following form of the primary, and I believe the executive risk policies were substantially identical in terms of the scope of coverage that they afforded. If hypothetically Genesis had sought reimbursement from its insured Magma and won that, and then Magma had to litigate with you to obtain the benefit of the bargain, you would agree that we would probably have a different result here. In other words, Genesis did not have to pursue you with a theory of equitable subrogation. They could have sought reimbursement from the insured after the declaration that, in fact, it was not owed anything, right? Right. I understand what you're saying, Your Honor. The problem I'm having with it is that the litigation between Genesis and Magma was not based on anything that National Union had done or not done. It was based on the notice, the improper notice of circumstances that Magma elected to give in that policy period, but that it and its broker failed to properly provide. Well, it's an unusual case. I mean, normally we'd have a deck action with all these issues involved and settled in one forum, so I understand the peculiar nature of this. Well, this case is a prime example of the hazards of piecemeal litigation, and my client has, frankly, borne the brunt of it. It paid a substantial premium on the $5 million indemnity payment. No, but it could have participated in settlement under reservation of rights, too, and litigated with the other insurer as well. I mean, you had other options. Not that that's of any concern legally here, but all the parties had options to pursue this in one forum, it seems to me. And we did participate to the level of the necessity of our participation. Remember, again, it was until 2010 that Magma and Executive Risk were advocating for placement of the loss in the first policy period, and Executive Risk specifically told the court in its position statement that it would not move that until there was a judicial determination telling them that they had made a mistake in placing the loss in the first policy period. That didn't happen until 2017, and there was some delay. You know, if there are no further questions, I would submit to the Court that it's high time that this case be finally ended. Thank you, counsel. Thank you. Before you sit down, I have a question. So I think you just said that the first-tier ERII, I call them, did not reassign the coverage until 2017 from the 2003-4 policy period to the 2004-6. And it's my reading of the record that that actually occurred in July of 2013. What? And, in fact, you told the district court that that had happened. Executive Risk had advised all the parties and the court that it would, if the court had determined that they had made an error in placing it in the first policy period, then they would move it. That's what they said, but that's not what they did. They actually reassigned it in 2013. Well, in Genesis 2, this Court stated, and this is law of the case, Executive Risk's statement that it would adjust its records to reflect exhaustion of the 2004-06 policy was explicitly contingent on a judicial determination that its decision was correct. So this Court made a finding that Executive Risk had taken the position that it would not reallocate the loss until the court decided that it had made a mistake. There's a reason for that, which is Executive Risk wanted cover, first of all, and, second of all, the XL policy, which was the second-layer access policy above Genesis and National Union. The terms of that policy were different. The first policy period, it involved 50-50 coinsurance, meaning that MAGMA paid a share of that layer of coverage. The second policy period was 100% XL. So by shifting that loss, it affected these significant rights of these other insurers. But my question is, didn't that happen in July of 2013 and not 2017? In 2013, Richard Nace, who's the Executive Risk vice president, submitted a declaration stating that they had reviewed the papers and had decided that they would reallocate the loss. They did advise the court of that. However, that is inconsistent with what this court found in Genesis 2 and inconsistent with what this court found in Genesis 3, where the court stated, because we now hold that Executive Risk was not provided a notice of circumstances under the 03-04 policy, Executive Risk can properly adjust its records to reflect exhaustion of the 04-06 policy. Since Executive Risk's 04-06 policy is deemed exhausted, National Union is now liable for providing first-layer access insurance. The court used the word now in the Genesis 3 decision twice, and it used that term advisedly and for a reason. You can't just read that out and say, well, you know, Executive Risk made a unilateral decision despite its prior representations. National Union didn't breach its contract because the position Executive Risk took and the findings of this court. And we did pay the loss two weeks after the decision was final. Thank you, counsel. May it please the court. Judge Smith, I just want to make sure that this is clear. When Genesis contributed to the settlement in 2007, it did so with a reservation of rights, and so MAGMA continued to be at risk of not having coverage from either of the excess insurers, and as Judge Vratil has pointed out, it continued to be at risk for that money until this court's decision in 2017. Secondly, to Chief Judge Thomas's point, Genesis actually amended its complaint in 2010 to assert a restitution claim as well as an equitable subrogation claim against MAGMA. So the hypothetical that you identified is actually the facts of this case. Well, with one difference, that my hypothetical had Genesis winning against your client and then you pursuing National Union separately, which is the difference. That is absolutely right, and the only reason that I'm making the point is that we were at risk because until this court's ruling in 2017, National Union continued to try to prevent ER2 from reallocating the underlying insurance, and it continued to raise other defenses against either MAGMA or Genesis having to pay. So my client was exposed throughout to the course of conduct that National Union was engaged in, and it's that course of conduct which is our bad faith claim, not the face of the pleadings itself. Okay. Thank you very much. This case is so interesting to these high school students who are here today that we've arranged... we've arranged for them to each get a CD so they can listen. Yeah. There are going to be insurance purchases sometime. That's true. Thank you very much for your arguments. Yeah. The case just argued to be submitted for decision.
judges: Thomas, M. Smith, Vratil